**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

GARRETT WALDSCHMIDT and )
MACKENSIE WALDSCHMIDT, )
formally known as MACKENSIE )
RAMSEY LONGFORD, husband and )
wife, )
                   )
       Plaintiffs, )
                   )
     v. )    Civil Action No. 18-1372
                   )    Judge Nora Barry Fischer
NVR, INC., )
                   )
                   )
       Defendant. )

## <u>MEMORANDUM OPINION</u>

### I.    Introduction

Before the Court is a motion to dismiss filed by Defendant NVR, Inc. (Doc. No. 8). For the reasons explained in this opinion, the motion will be granted.

### II.    Background

On or about October 7, 2017, Plaintiffs Garrett and Mackensie Waldschmidt signed a contract with NVR, Inc. (d/b/a Ryan Homes), regarding the construction of their new home at 4036 Weatherburn Drive, Valencia, Pennsylvania 16059. Doc. No. 1-2 ¶ 6. The contract at issue — hereinafter referred to as the "Purchase Agreement" — identifies the property as Lot 277 in the residential development known as Weatherburn Heights. Doc. No. 1-2, Exhibit C.

Plaintiffs allege that, at the time they executed the Purchase Agreement, NVR representatives told them that "there was NO plan for anything to be built on the green space to the south of their lot." Doc. No. 1-2 ¶ 7. In addition, they allege that, in or around December 2017 (i.e., about two months *after* the parties executed the Purchase Agreement), NVR representative

Blake Anderson provided them with a Lot Plan (hereinafter the "2014 Plan"), which depicted the land adjacent to their home as undeveloped "communal green space." *Id.* ¶¶ 4, 7, 9, 12. The 2014 Plan was filed with the Butler County Recorder of Deeds Office on December 3, 2014. *Id.*

Unbeknownst to plaintiffs, on August 15, 2017, NVR had filed an amended Lot Plan with the register of deeds office (hereinafter the "2017 Plan"), depicting two new lots directly to the south of plaintiffs' home. Plaintiffs allege that they were never given a copy of the 2017 Plan prior to or after the execution of the Purchase Agreement. *Id.* ¶ 9. In other words, they claim that NVR never informed them that the communal green space adjacent to their home would soon be developed.

Plaintiffs further assert that they relied upon NVR's representations regarding the communal green space. They purportedly paid a premium of $5000 for that specific location in the community; they also paid $1800 for additional windows facing the green space and nearly $11,000 for a fence/gate providing access to same. *Id.* ¶ 10.

Plaintiffs claim that they were given another copy of the 2014 Plan on or about the settlement date — May 17, 2018. *Id.* ¶ 14. They moved into their home in July 2018; at that time, they noticed excavation occurring in the green space. Plaintiffs immediately contacted two NVR representatives, Alicia Kasing and Blake Anderson, who told them that they "did not know what was going on." *Id.* ¶ 16. Plaintiffs claim, however, that Blake Anderson knew about the development plans as early as February 2018. *Id.* ¶ 18.

Based on these allegations, plaintiffs bring a five-count complaint against NVR for breach of contract (Count I); "breach of representation" (*i.e.*, promissory estoppel) under the Restatement of Property Section 524 (Count II); fraudulent misrepresentation (Count III); violations of the

Unfair Trade Practices and Consumer Protection Law (Count IV); and a preliminary and permanent injunction (Count V).

## III.    Jurisdiction

The Court exercises subject matter jurisdiction under 28 U.S.C. § 1332.  Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## IV.    Procedural history

On September 20, 2018, plaintiffs filed their complaint in the Butler County Court of Common Pleas.  On October 12, 2018, NVR filed a notice of removal.  NVR then filed a motion to dismiss on October 19, 2018 (Doc. No. 8).  Plaintiffs thereafter filed a motion to enforce the court's order regarding motions practice (Doc. No. 11).  That motion has been denied.  The motion to dismiss is now fully briefed (Doc. Nos. 9, 17–22),[1] and it is ripe for disposition.

## V.    Standard of review

The test under a Rule 12(b)(6) challenge is "whether, under any reasonable reading of the pleadings, [the] plaintiff may be entitled to relief." *Kundratic v. Thomas*, 407 F. App'x 625, 627 (3d Cir. 2011).  As always, the Court must accept as true the well-pleaded factual allegations and construe them in the light most favorable to the plaintiff.  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *McGovern v. City of Phila.*, 554 F.3d 114, 115 (3d Cir. 2009). Nevertheless, the factual allegations must be "enough to raise a right to relief above the speculative

---

[1] Plaintiffs filed a "motion in opposition to defendant's motion to dismiss."  Doc. No. 17.  The Court interprets this document as a response to NVR's motion to dismiss, rather than a motion for relief.  *See* Fed. R. Civ. P. 12.

level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). In other words, the claim must be "plausible." *Id.* at 570.

When considering a motion to dismiss, the Court "will only consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti*, 716 F.3d at 772 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)). In other words, the Court examines the complaint and "narrowly defined" other types of material, such as documents "integral to or explicitly relied upon in the complaint," and "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss." *In re Rockefeller Ctr. Properties, Inc. Securitites Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).

In view of this standard, the Court will consider the pleadings and the Purchase Agreement attached to the complaint.

## VI.    Discussion

The Court now turns to the complaint to determine whether plaintiffs have stated an actionable claim.

Because this case invokes this Court's diversity jurisdiction, it must apply Pennsylvania substantive law and federal procedural rules to the resolution of state law claims. *See Erie Railroad Company v. Tomkins*, 304 U.S. 64 (1938)). The Purchase Agreement also contains a governing law provision: Pennsylvania law applies to the contract's interpretation and enforceability. *See* Doc. No. 1-2 at 26 ¶ 26.

## A.     Breach of contract (Count I)

In Count I, plaintiffs allege that NVR breached the Purchase Agreement by developing the adjacent lots "in contrast to the plan submitted." Doc. No. 1-2 at 9 ¶ 26. Plaintiffs' claim is confusing because they do not identify the "plan" to which they are referring. In addition, in Paragraph 21 of their complaint, plaintiffs state that *both* the 2014 Plan and the 2017 Plan were incorporated into the Purchase Agreement, as evidenced by the following language:

> The Home will be constructed as shown on the construction drawings (or blueprints), the grading plan, floor plans and other plans related to the construction of the Home, all of which You acknowledge that You reviewed, together with the options You selected on the Master Selection Sheet, which is incorporated into this Agreement by reference . . .

Doc. No. 1-2 at 21 ¶ 1.[2] Despite the lack of clarity in the complaint, plaintiffs argue in their written brief that the 2014 Plan is controlling because they were never provided a copy of the 2017 Plan, even though the 2017 Plan existed at the time the parties executed the Purchase Agreement. *See* Doc. No. 18 at 3 (referencing Doc. No. 1-2 at 25).

To state a breach-of-contract claim under Pennsylvania law, a plaintiff must plead three elements: (1) the existence of a contract, including its essential terms; (2) a breach of that contract; and (3) damages. *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004); *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269, 1272 (Pa. Super. 2002). Because plaintiffs' claim falters on the second element, they have not alleged an actionable claim.

---

[2] The Court questions whether the Purchase Agreement incorporated either the 2014 Plan or the 2017 Plan. The language plaintiffs cite refers to the plans "related to the construction of the *Home*." Doc. No. 1-2 at 21 ¶ 1 (emphasis added). Nothing about this language suggests that the Purchase Agreement would incorporate general plans for the development of the community, particularly when NVR had no obligation to provide plaintiffs with a copy of any community plans. Doc. No. 1-2 at 21 ¶ 1 ("Unless otherwise stated… We have no obligation to provide You with copies of… general plan maps or other planning documents which may affect the planning and development of the surrounding area."). Nevertheless, the parties have not raised this issue, nor is it dispositive to the instant motion. The Court need not determine whether the 2014 Plan or the 2017 Plan was, in fact, incorporated into the Purchase Agreement. The plain language of the agreement shows that NVR was not bound to maintain the adjacent property as green space, regardless of whether the 2014 Plan, the 2017 Plan, or both plans, had been incorporated therein.

As NVR correctly argues, NVR made no representations or warranties regarding the adjacent land, nor was it under any obligation to maintain that property as green space. The Purchase Agreement states:

> What You are buying. . . . [NVR] make[s] no representations or warranties about what other improvements may be constructed within the Community including home types, sizes, location or prices **or the uses of property adjacent to the Property or to the Community. Any plans or information You may have seen for this community are subject to change**. Unless otherwise stated in an addendum to this Agreement, [NVR has] no obligation to provide You with copies of preliminary or final site plans, the record plat, blueprints, general plan maps or other planning documents which may affect the planning and development of the surrounding area.

Doc. No. 1-2 at 21 ¶ 1 (emphasis added).

Under Pennsylvania law, "[t]he fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." *Murphy v. Duquesne Univ. Of The Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001). The following tenants of contract interpretation further guide this Court:

> When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. In construing a contract, we must determine the intent of the parties and give effect to all of the provisions therein. An interpretation will not be given to one part of the contract which will annul another part of it.

*Capek v. Devito*, 767 A.2d 1047, 1050 (Pa. 2001) (citations and quotation marks omitted). Pennsylvania courts emphasize that a contract "must be interpreted as a whole, and an interpretation that gives effect to all of the contract's provisions is preferred." *Gaffer Ins. Co. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1113 (2007). A "preferred interpretation" should ascribe "the most reasonable, probable, and natural conduct to the parties." *Id.* at 1113.

Because the Purchase Agreement is clear and unequivocal, its meaning must be interpreted based on the contract's plain language. In other words, this Court will not consider extraneous

matters, such as alleged conversations between NVR representatives and plaintiffs, when determining the intent of the parties. *Capek*; 767 A.2d at 1050; *Com., Dep't of Transp. v. Manor Mines, Inc.*, 565 A.2d 428, 432 (1989) (collecting cases).[3]  Rather, the Court looks solely at the language of the Purchase Agreement, which states that NVR makes "*no representations or warranties* about… the uses of property adjacent to [plaintiffs' new home] . . . Any plans or information You may have seen for this community are *subject to change*."  Doc. No. 1-2 at 21 ¶ 1 (emphasis added).  Given this language, plaintiffs' assertion that NVR breached the Purchase Agreement by building on the adjacent lots is meritless.  Their interpretation would nullify the Purchase Agreement's plain language, which is contrary to basic tenants of contract law.

Furthermore, respecting plaintiffs' claim that NVR was somehow obligated to leave the adjacent lots undeveloped because NVR representatives provided them with a copy of the 2014 Plan, even after the 2017 Plan had been filed at the register of deeds, plaintiffs provide no authority for this proposition.  They do not cite any specific language in the Purchase Agreement, nor do they provide any case law, that supports their argument.  To the contrary, the Purchase Agreement states: "We have no obligation to provide You with copies of the preliminary or final site plans, the record plat, blueprints, general plan maps or other planning documents which may affect the planning and development of the surrounding area."  *Id.*  The contract also warned plaintiffs that "oral statements or promises" would not be enforceable unless specifically memorialized in the Purchase Agreement.  *Id.* ¶ 16.  Finally, the parties clearly intended the written contract to set forth their full agreement via an integration clause: "No other prior or contemporaneous agreements, representations, promises or terms (written or oral) are part of this Agreement, but are superseded

---

[3] For additional analysis regarding parol evidence, and why this Court will not consider any matters extraneous to the Purchase Agreement, *see* infra Part VI(C).

by this written Agreement." *Id.* ¶ 17. Based on this language, there is no basis to conclude that NVR agreed to maintain any adjacent lots as communal green space consistent with the 2014 Plan.

Moreover, the Purchase Agreement even gave the parties an opportunity to memorialize oral statements or promises made in conjunction with the agreement. "THIS SECTION SHOULD NOT BE LEFT BLANK IF YOU ARE RELYING ON ANY ORAL STATEMENTS OR PROMISES. The following oral statements or promises have been made in conjunction with this Agreement and performance of each of these statements or promises is incorporated into each party's obligation to fully perform the terms of this Agreement." Doc. No. 1-2 at 25 ¶ 16 (emphasis in original). Immediately following this language, the parties typed "none." *Id.* Once again, this language strongly undermines plaintiffs' assertions.

Finally, the Court notes that plaintiffs have not provided any explanation why their interpretation of the contract would seem to contradict its plain terms. Plaintiffs signed the Purchase Agreement on October 7, 2017. Doc. No. 1-2 at 27 ¶ 30. The signature section explicitly states that, upon signing the document, it will be conclusively "presumed that the [parties] have fully read and understood all of the terms of the Agreement." *Id.* To that end, the Court presumes that plaintiffs read and fully understood the agreement they signed. *See also Schillachi v. Flying Dutchman Motorcycle Club*, 751 F. Supp. 1169, 1174 (E.D. Pa. 1990) (discussing, under Pennsylvania law, the duty to read and understand a contract before executing it).

For these reasons, plaintiffs have failed to state an actionable claim for breach of contract. Count I will be dismissed with prejudice because amending the complaint would not cure the deficiencies.

**B.      Breach of representation (Count II)**

Count II of the complaint alleges a "breach of representation" under the Restatement of Property Section 524. Doc. No. 1-2 at 9. The Court interprets this claim as one of promissory estoppel. Plaintiffs argue that, even if NVR made oral promises or representations that are otherwise unenforceable at law, a court should enforce them in equity to the extent necessary to protect plaintiffs' expenditures made in reasonable reliance. *Id.* ¶ 28. As discussed above, plaintiffs paid a premium for the property location; they also spent money on windows overlooking the green space and a gated fence that would provide access to same.

Section 524 provides the following principle:

> An oral promise or representation that certain land will be used in a particular way, though otherwise unenforceable, is enforceable to the extent necessary to protect expenditures made in reasonable reliance upon it.

RESTATEMENT (FIRST) OF PROPERTY § 524 (1944). The rationale for the rule is explained in Comment a, where the following appears:

> Owners of neighboring lands are prone to enter into informal agreements respecting the future use of their respective lands in which each agrees to use his land in a way that will benefit the other. The relationship of trust and confidence frequently existing between neighbors tends to produce a very considerable degree of casualness and informality in their dealings with each other. Adjustments in improvement and use are frequently made on the basis of their informal understandings. If the observance of these understandings is not compelled, much hardship may result. . .

*Id.* The rule is further illustrated as follows:

1. A conveys Blackacre to B by a deed in which it is stipulated that the land conveyed shall be used only for dwelling house purposes. No promises respecting the use of other land of A are contained in the deed. A does, however, own other land in the vicinity and, as an inducement to the purchase of Blackacre, he tells B that this other land will be sold subject to the same restriction to which B's land is to be subjected. In reasonable reliance upon this promise, B purchases. A may be enjoined from selling the other land free from the restriction.

*Id.*

In asserting a claim under Section 524, plaintiffs rely exclusively on one decision from the Superior Court of Pennsylvania: *Haines v. Minnock Const. Co.*, 433 A.2d 30, 33 (Pa. Super. Ct. 1981). *See* Doc. No. 1-2 at 9–10, ¶¶ 28–29. The Court's research suggests that *Haines* is the only Pennsylvania case that has ever favorably applied Section 524.[4] Along these lines, NVR argues that the Pennsylvania Supreme Court would not adopt Section 524. Doc. No. 9 at 8. Because this Court finds that plaintiffs cannot assert a viable claim under Section 524 under the instant set of facts, it need not address whether Section 524, as a general matter, provides an avenue of recovery under Pennsylvania law.

Plaintiffs have not stated a claim under Section 524 for at least two reasons. First, promissory estoppel is not available when an express contract exists on the same subject matter. Second, any alleged reliance on the part of plaintiffs was unreasonable, even when the pleadings are viewed in the light most favorable to them.

---

[4] In the absence of clear authority from the Pennsylvania Supreme Court, a district court must ordinarily predict how it would rule by "giving proper regard to the relevant rulings of other courts of the state." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 670 (3d Cir. 2002) (internal quotations omitted). In *Burns v. Baumgardner*, 449 A.2d 590, 595 (Pa. Super. Ct. 1982), the Superior Court of Pennsylvania stated that Section 524 should be "strictly construed" because "the rule is in large measure contrary to the policy established by the Statute of Frauds." Section 524 was again briefly discussed in *Thatcher's Drug Store of W. Goshen, Inc. v. Consol. Supermarkets, Inc.*, 636 A.2d 156, 159 (Pa.1994). Nevertheless, in *Thatcher's*, the Pennsylvania Supreme Court found that the oral assurance did not constitute an interest in land, and thus it was unnecessary to address whether Section 524 served as an exception to the Statute of Frauds. Along these lines, it is unclear whether the Pennsylvania Supreme Court would apply Section 524 in the right set of circumstances. It suffices to say that the Superior Court has invoked the rule on one occasion, and, in another instance, it has expressed some reservation about it.

**1. Section 524 is not a viable theory because there is an express contract**

Section 524 is a theory of promissory estoppel. Indeed, Section 524 is captioned "Promises Enforceable by Estoppel." Promissory estoppel applies when a promise unsupported by consideration must be enforced to remedy a manifest injustice. *See Cardamone v. Univ. of Pittsburgh*, 384 A.2d 1228, 1233 (Pa. Super. Ct. 1978); *Fried v. Fisher*, 196 A. 39, 41 (Pa. 1938). Put another way, it applies to enforce a promise when there is no binding contract. *See* sources cited *id.*; *Carlson v. Arnot-Ogden Mem'l Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990). To that end, it is well-established that promissory estoppel has no application when the parties have entered into an enforceable agreement on the same subject matter. *See, e.g.*, *Synesiou v. DesignToMarket, Inc.*, No. 01-5358, 2002 WL 501494, at *4 (E.D. Pa. Apr. 3, 2002) ("[P]romissory estoppel has no application when parties have entered into an enforceable agreement."); *Carlson*, 918 F.2d at 416; *Bethlehem Steel Corp. v. Litton Indus., Inc.*, 488 A.2d 581, 593 (Pa. 1985) (promissory estoppel applies only where there is no binding contract). As discussed above, the parties entered an enforceable contract that explicitly negates plaintiffs' current assertions regarding the adjacent land's development, thus rendering a promissory estoppel theory untenable.

The Court's decision also aligns with the guidance found in Section 524. As quoted above, the rule stems from the "trust and confidence frequently existing between neighbors" that tends to produce a "considerable degree of casualness and informality in their dealings with each other." RESTATEMENT (FIRST) OF PROPERTY § 524 (1944), Comment a. The rule is then illustrated where A conveys Blackacre to B — with *no promises in the deed* regarding the use of other land that A owns nearby — despite A inducing B to purchase Blackacre based on such promises. *Id.*

The Restatement's rationale and illustration do not support application of Section 524 in this case. The alleged promise was not an informal agreement amongst neighbors. Rather, there

was a high degree of formality associated with the Purchase Agreement, which involved the sale

of a home worth nearly a half-million dollars. In addition, unlike the Restatement's example, here

the Purchase Agreement expressly stated that *no promises* would be made regarding the future uses

of adjacent land. In other words, the contract's plain language was not merely silent – instead, it

*negates* plaintiffs' assertions regarding the alleged promise at issue. For these reasons, the Court

is further convinced that Section 524 is not a tenable theory under the instant set of facts.

### 2. Plaintiffs' reliance was unreasonable under the circumstances

As an additional concern, to the extent Section 524 remains the law in Pennsylvania, it

must be "strictly construed." *Burns v. Baumgardner*, 449 A.2d 590, 595 (Pa. Super. Ct. 1982).

"Before an oral promise can be enforced because of estoppel, there must be *reasonable* reliance

on the promise." *Id.* (emphasis in original). Here, any reliance on the part of plaintiffs was

unreasonable, even when the Court views the alleged facts, and draws all inferences therefrom, in

the light most favorable them.

In *Thatcher's Drug Store of W. Goshen, Inc. v. Consol. Supermarkets, Inc.*, 478, 636 A.2d

156, 160 (1994) — which is the only Pennsylvania Supreme Court decision that has ever

mentioned Section 524[5] — the court held that an alleged oral promise was unenforceable because

reliance on the promise was unreasonable. *Id.* at 477–80. The *Thatcher* court found that the

plaintiff's lease agreement clearly reserved the defendant's right to operate a pharmacy on the

property. *Id.* at 478. Similar to the facts in *Thatcher*, here there is an express contract that reserved

---

[5] The Pennsylvania Supreme Court did not rule on whether Section 524 was an applicable exception to the statute of frauds. 636 A.2d at 159. Thus, it is unclear whether it would adopt Section 524 in the right circumstances. See *supra* note 4 for further elaboration.

NVR's right to develop the adjacent property. The Purchase Agreement contains no promises or reservations of any kind regarding the future uses of the surrounding lots.

By contrast, Plaintiffs rely on *Haines v. Minnock Const. Co.*, 433 A.2d 30 (Pa. Super. Ct. 1981), where the court did find reasonable reliance under Section 524. In *Haines*, a woman purchased a townhouse in large part due to its wooded character. *Id.* at 35. She discussed the community's plans with company representatives, and she was given pamphlets that extensively marketed the wooded area behind the townhome she would be purchasing. In one pamphlet, it stated:

> Our land planners sensitively designed the entire area to enhance its natural and rustic beauty. And due to the wooded character of the land, each condominium grouping sets back, privately shaded from its neighbor.

*Id.* at 31. Another brochure stated:

> This is a fresh and special place where coming home is a whole new way of living. Your townhouse sets back, nestled in the beauty of its own tree shaded private land. All the areas [sic] natural charm has been preserved. We left untouched the generous and quiet forest.

*Id.* The woman was also given a "residential area guide" depicting the area behind her townhouse as "open space." *Id.* The *Haines* court found that the brochures and oral representations did not satisfy the statute of frauds, but the developer's promises were enforceable under Section 524 because the woman's reliance on those representations was reasonable. "Appellee was particularly interested in the townhouse she purchased because of its wooded charm and beauty and she had every reason to expect that it would remain that way." *Id.* at 35.

The *Haines* case is distinguishable because plaintiffs and NVR executed a Purchase Agreement that explicitly stated that the developer made *no* promises or warranties of any kind regarding the uses of property adjacent to plaintiffs' home. Doc. No. 1-2 at 21. Noticeably absent

from *Haines* was any explicit contractual language addressing the surrounding land. Here, however, not only did the Purchase Agreement state that NVR made no such promises about the development of the surrounding property, it even warned that "any plans or information You may have seen for this community are *subject to change*." *Id.* (emphasis added).

Accordingly, even if the Pennsylvania Supreme Court would adopt Section 524, in this Court's estimation, plaintiffs have failed to plead a *prima facie* case supporting the element of reasonable reliance. Because the Purchase Agreement negates the alleged promises at issue, any amendment would be futile. This claim will also be dismissed with prejudice.

## C.      Fraudulent misrepresentation (Count III)

Plaintiffs next assert that NVR's agents Alicia Kasing and Blake Anderson made fraudulent misrepresentations that induced them to purchase the home they otherwise would not have purchased but for those representations. Doc. No. 1-2 at 11 ¶ 43. The Court interprets Count III as a fraudulent inducement claim.

The essence of fraud is "a misrepresentation fraudulently uttered with the intent to induce the action undertaken in reliance upon it, to the damage of its victim." *Moser v. DeSetta*, 589 A.2d 679, 682 (Pa. 1991) (quoting *Thomas v. Seaman*, 304 A.2d 134, 137 (Pa. 1973)). To demonstrate fraud, the plaintiff must establish the following elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994).

"Fraud in the inducement," which is one theory of "fraudulent misrepresentation," applies when a plaintiff contends that representations were fraudulently made and that, "but for them," he would never have entered into the agreement. *See Blumenstock v. Gibson*, 811 A.2d 1029, 1036 (Pa. Super. Ct. 2002); *1726 Cherry St. P'ship by 1726 Cherry St. Corp. v. Bell Atl. Properties, Inc.*, 653 A.2d 663, 666 (Pa. Super. Ct. 1995). "Fraud in the inducement" is distinguishable from "fraud in the execution." The latter occurs when a party "contends that he or she executed the agreement because he or she was defrauded by being led to believe that the document he or she was signing contained terms that were actually omitted therefrom." *1726 Cherry St.*, 653 A.2d at 666; *see also Blumenstock*, 811 A.2d at 1036 (discussing the distinction); *Hart v. Arnold*, 2005 884 A.2d 316, 340 (Pa. Super. Ct. 2005) (same).

The distinction between fraud in the inducement and fraud in the execution is significant. Fraud in the inducement claims, unlike fraud in the execution claims, are ordinarily barred[6] when the contract at issue is fully integrated. *Toy v. Metro. Life Ins. Co.*, 593 Pa. 20, 49, 928 A.2d 186, 205 (2007); *HCB Contractors v. Liberty Place Hotel Assocs.*, 652 A.2d 1278, 1280 (Pa. 1995); *Hart*, 884 A.2d at 340; *Blumenstock*, 811 A.2d at 1036; *1726 Cherry St.*, 653 A.2d at 668. "The effect of an integration clause is to make the parol evidence rule particularly applicable. Thus the written contract, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements, or other writings, are admissible to explain or vary the terms of the contract." *1726*

---

[6] Pennsylvania courts provide a narrow exception to this general rule in so-called "real estate inspection cases." These cases, beginning with *LeDonne v. Kessler*, 389 A.2d 1123, 1131 (Pa. Super. Ct. 1978), deal with an exception to the strict application of the parol evidence rule "in sales and leases of real property where oral representations regarding a lack of physical defects in the property were made and the purchaser or lessee was not able to discover, through visual inspection, that the representations were false." *HCB Contractors*, 652 A.2d at 1280. This exception is not at issue here, and the *LeDonne* line of cases is inapposite.

*Cherry St.*,653 A.2d at 665 (1995). The rationale for barring such claims is that a "a party cannot justifiably rely upon prior oral representations and then sign a contract containing terms that refute the alleged prior oral representations." *Hart*, 884 A.2d at 340 (internal citations and quotations omitted).

As discussed above, the parties in this case executed the Purchase Agreement which contained the following integration clause: "No other prior or contemporaneous agreements, representations, promises or terms (written or oral) are part of this Agreement, but are superseded by this written Agreement." Doc. No. 1-2 at 26–27 ¶ 27. Moreover, plaintiffs' claim in Count III is one of fraud in the inducement. That is, plaintiffs argue that they would not have purchased their home "if not but for material misrepresentations." Doc. No. 1-2 at 11 ¶ 43.[7]

The effect of the integration clause is dispositive. This Court cannot consider prior or contemporaneous representations regarding a matter covered by the Purchase Agreement. Of note, plaintiffs do not contend that they did not understand the meaning of the integration clause, nor do they claim that they attempted to negotiate alterations to the terms of the Purchase Agreement. Moreover, they do not allege that NVR omitted any material terms of their agreement. *See generally* Compl., Doc. No. 1-2. Accordingly, this case fits squarely with those where fraudulent inducement claims are barred under Pennsylvania law.

---

[7] Interestingly, the complaint includes alleged misrepresentations that occurred *after* the Purchase Agreement was executed. For instance, plaintiffs allege that, on or about December 20, 2017 (more than 2 months after entering the agreement), Blake Anderson showed them the 2014 Plan at a "preconstruction meeting." Doc. No. 1-2 at 7 ¶ 12. Obviously, representations occurring after the agreement was signed could not have induced them to purchase their home. While the parol evidence rule would not bar this Court from considering representations occurring after the agreement was entered, they are irrelevant. Plaintiffs have not brought forth any additional theories for breach of contract or fraudulent inducement, aside from those claims that have already been discussed herein. To that end, representations occurring after the Purchase Agreement had been entered have no bearing on the Court's analysis.

Not only does the integration clause bar plaintiffs' claim, other express language in the Purchase Agreement corroborates this Court's finding that plaintiffs cannot state a claim for justifiable reliance. As previously discussed, plaintiffs' claims relate to subjects that were specifically addressed in the Purchase Agreement. The plain language of the contract negates their assertions entirely.[8] That is, the Purchase Agreement explicitly states that NVR made no representations or warranties about the uses of property adjacent to plaintiffs' home, and any plans regarding the community were subject to change. Doc. No. 1-2 at 21 ¶ 1. The Court thus finds that, even at the motion to dismiss stage, plaintiffs cannot show justifiable reliance. *See HCB Contractors*, 652 A.2d at 1279 (Pa. 1995) (using similar logic to bar a fraudulent inducement claim that "relate[d] to subjects that were specifically addressed in the written contract."); *see also Blumenstock*, 811 A.2d at 1036 ("[C]ase law clearly holds that a party cannot justifiably rely upon prior oral representations yet sign a contract denying the existence of those representations.").

Although the Court is sympathetic to plaintiffs' claims, it is nonetheless bound by the confines of Pennsylvania contract law. And while these rules might seem unforgiving at first glance, it is well to remember that plaintiffs signed a formal agreement that directly contradicts their current claims. As the Pennsylvania Supreme Court has explained:

> If plaintiffs relied on any understanding, promises, representations or agreements made prior to the execution of the written contract or lease, they should have protected themselves by incorporating in the written agreement the promises or representations upon which they now rely, and they should have omitted the provisions which they now desire to repudiate and nullify.

*Bardwell v. Willis Co.*, 100 A.2d 102, 105 (Pa. 1953). Count III will thus be dismissed with prejudice.

---

[8] The Court notes that, in plaintiffs' brief in opposition to the motion to dismiss, they completely ignore NVR's argument that any reliance was unreasonable given the plain language in the Purchase Agreement. Doc. No. 18 at 8.

### D.  Violation of the UTPCPL (Count IV)

Plaintiffs next allege a violation of the Pennsylvania Unfair Trade Practices Consumer Protection Law (UTPCPL or the "Act").  Specifically, they assert that NVR's misrepresentations about the green space amounted to "unfair and deceptive acts and practices" under the Act.  The Court finds that, once again, plaintiffs have failed to state a claim because they cannot show justifiable reliance as a matter of law.

With respect to a private cause of action, the Act provides:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 31 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 Pa. Stat. Ann. § 201-9.2.  The UTPCPL is Pennsylvania's consumer protection law.  Its purpose is to protect the public from unfair or deceptive business practices.  *Knight v. Springfield Hyundai*, 81 A.3d 940, 949 (Pa. Super. Ct. 2013); *Grimes v. Enter. Leasing Co. of Philadelphia, LLC*, 66 A.3d 330, 335 (Pa. Super. 2013).

Under the Act, it is unlawful to engage in "unfair or deceptive acts or practices" in the conduct of any trade or commerce.  73 Pa. Stat. Ann. § 201-3.  Relevant here, the Act provides "definitions" of unlawful activities, to include:

* * *

> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

\* \* \*

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 Pa. Stat. Ann. § 201-2.  Plaintiffs allege that NVR engaged in both of these unlawful activities.  Doc. No. 1-2 at 12 ¶¶ 48, 49.

It is well-settled law that any private cause of action under the UTPCPL requires proof of justifiable reliance.  *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004) ("To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance."); *see also Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 208 (Pa. 2007); *Kern v. Lehigh Valley Hosp., Inc.*, 108 A.3d 1281, 1289 (Pa. Super. Ct. 2015); *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001); *Debbs v. Chrysler Corp.*, 810 A.2d 137, 156–57 (Pa. Super. Ct. 2002); *Sexton v. PNC Bank*, 792 A.2d 602, 607 (Pa. Super. Ct. 2002).  As discussed above, justifiable reliance is likewise a required element for common law fraud claims.  *See* sources cited *id*.  The Pennsylvania legislature "never intended to do away with traditional common law [fraud] elements of reliance and causation in an UTPCPL action."  *Kern*, 108 A.3d at 1281 (collecting cases).

This Court has already explained in Part VI(C), *supra*, why plaintiffs have failed to plead sufficient facts that would establish a *prima facie* case for justifiable reliance.  To that end, the Court's analysis regarding plaintiffs' fraud claim is applicable here.  The Purchase Agreement includes an integration clause that precludes this Court from considering parol evidence; even further, to the extent any of the alleged representations occurred after the Purchase Agreement was signed, the language in the Purchase Agreement explicitly contradicts the alleged promises they now seek to enforce.  Ample case law supports this Court's view that justifiable reliance cannot be

shown in this context, whether through a fraud in the inducement claim or an alleged violation of the UTPCPL. *See* Part VI(C) *supra*; *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 439 (Pa. 2004) (upholding trial court's dismissal of UTPCPL claim at the pleading stage for failing to show justifiable reliance under a similar set of facts). Even in the absence of controlling precedent, basic logic would render the same conclusion. Plaintiffs cannot plausibly claim that they justifiably relied on NVR's alleged promise to maintain adjacent lots as green space, when the contract they signed plainly says that no such promises would be made.

Under these circumstances, plaintiffs cannot state a claim for a violation of the UTPCPL. This claim will likewise be dismissed with prejudice.

### E.    Preliminary and permanent injunction (Count V)

In their remaining claim, plaintiffs request preliminary and permanent injunctive relief. In determining whether injunctive relief is appropriate, courts consider whether:

> (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest.

*Coffelt v. Fawkes*, 765 F.3d 197, 201 (3d Cir. 2014) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)). "There is no significant difference between the standards for a preliminary injunction and a permanent injunction." *Brandt v. Burwell*, 43 F. Supp. 3d 462, 483 (W.D. Pa. 2014); *see also Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n. 12 (1987)) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than

actual success."); *Figueroa v. Precision Surgical, Inc.*, 423 F. App'x 205, 207 (3d Cir. 2011) [9] An injunction is an "extraordinary remedy" that should be issued in limited circumstances. *Viad Corp. v. Cordial*, 299 F. Supp. 2d 466, 475 (W.D. Pa. 2003) (internal citations and quotations omitted).

For the reasons discussed above, plaintiffs have failed to state any claim upon which relief can be granted. Their claim for injunctive relief thus falters on the element that requires a showing of potential success on the merits. Count V will thus be dismissed.

## VII.    Conclusion

For the reasons stated herein, plaintiffs have failed to state a claim upon which relief could be granted. As this Court has explained, the Purchase Agreement is controlling, and it stands to refute their claims. Put simply, the parties entered a binding agreement whereby no promises or warranties were made regarding the uses of the surrounding property. Because this language is clear and unambiguous, and because the contract further included an integration clause, this Court did not consider parol evidence to modify or refute the contract's plain terms. Along these lines, plaintiffs have also attempted to pursue theories of promissory estoppel, common law fraud, and state consumer protection law violations. Each of these theories fails because plaintiffs cannot show justifiable reliance in the face of an express contract that negates their claims.

---

[9] With regards to a *preliminary* injunction, district courts use a federal standard. *See Figueroa v. Precision Surgical, Inc.*, 423 F. App'x 205, 207 (3d Cir. 2011) ("Although we apply state law to the substantive issues in this diversity action . . . we utilize a federal standard in examining requests to federal courts for preliminary injunctions.") (internal quotations, footnote, and citations omitted); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 799 (3d Cir. 1989). The law is less clear when it comes to permanent injunctions. As other courts have explained, there is "some uncertainty regarding whether state or federal law applies to the issuance of a permanent injunction in a diversity case that does not implicate an express statutory right to injunctive relief." *O'Hara, Jr. v. Premcor Ref. Grp., Inc.*, No. 09-500 RBK/JS, 2011 WL 337951, at *4 (D. Del. Jan. 28, 2011) (citing *Cook Inc. v. Boston Sci. Corp.*, No. 01–5825, 2002 U.S. Dist. LEXIS 19223, *4–5 (N. D. Ill. Oct. 1, 2002). Here, however, Pennsylvania's standard for injunctive relief is essentially the same as the federal standard. *Brayman Const. Corp. v. Com., Dep't of Transp.*, 13 A.3d 925, 935 (Pa. 2011) (explaining standard for preliminary injunction); *Kuznik v. Westmoreland Cty. Bd. of Comm'rs*, 902 A.2d 476, 489 (Pa. 2006) (explaining standard for permanent injunction). Accordingly, the Court's analysis remains unchanged regardless of whether it applies Pennsylvania or federal law, and regardless of whether it considers an actionable claim for preliminary or permanent injunctive relief.

Finally, as explained in this opinion, leave to amend will not be granted because amendment would not cure the deficiencies. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (stating that "futility" is grounds for denial of leave to amend); *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007); *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

An appropriate order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Dated: December 7, 2018

cc/ecf: All counsel of record.